May it please the Court, Michael Morrison on behalf of Plaintiff Gary Blankenhorn, and I'd like to reserve five minutes of time for rebuttal argument, and unless this Court is interested in discussing other issues, I plan to spend the majority of my time discussing why defendants lack probable cause to arrest Mr. Blankenhorn, and why Plaintiff has proffered more than sufficient evidence to maintain his malicious prosecution claim. If they lack probable cause, as a matter of law, the force used was unreasonable. As this Court decided in PB v. Koch, any force which is unnecessary is excessive force. And again, that holding was made five years prior in Felix v. McCarthy. So if there is no probable cause to arrest him for anything on that day, then the force used against them, even if you accept their characterization that it's minimal force, which we dispute, it's excessive force. Well, again, if you just look at Koch, and I think that's the case that I would most rely upon, first of all, they knew in this case they didn't have probable cause to arrest Mr. Blankenhorn. That would be our argument in this case, because again, there's no reasonable stake here with names of the probable cause. Perhaps if there was some reasonable mistake in arresting Mr. Blankenhorn, and then they used a minimal amount of force, you can make those arguments rely upon the Supreme Court. There is no probable cause here. It's obvious there wasn't probable cause. And if I can run through the facts, I'll make that case. Mr. Blankenhorn said he came to the block under oath to socialize and to meet girls. And there is nothing in this record which disputes or contradicts that intent. Now, it's undisputed, he's doing nothing unlawful. He's walking in the block, and he's stopped. And he's not stopped by block security. He's stopped by Officers Nguyen and Sergeant Gray. And when they detain him, they don't tell Mr. Blankenhorn why he's being detained. Instead, they ask him, what is he doing at the block? And he tells them, I'm talking to a friend. And then he asks the officer, does he have any more questions? And the officer doesn't respond, and Mr. Blankenhorn tries to leave. And it's the officer who prevents Mr. Blankenhorn from leaving by grabbing hold of his shirt and threatening him with mace if he doesn't get down to the ground. Now, this threat with mace, Mr. Blankenhorn hasn't done anything except be present at the block, and yet the officer has already gone and is threatening him with mace. And let me see if there's one fact, make sure I understood it correctly. I don't have the exact words, but to the effect that the security guard says he's under arrest. Does everybody agree that something to that effect was said by the security guard? Yes, at the very end of the detention, something to the effect, Mr. Blankenhorn's exact words in his declaration was, you're being detained for trespassing. For trespassing, right, okay. That was after he, that's down the line from where he was. Right, in fact, it's the officers, this is to give the sequence of events, they stop him, they hold him there, they get the security, they ask the security, do you want him arrested? And then they arrest him. So that's the sequence of events. Now, it's after they got the ID and somebody checked the ID. Right, now that's an important point about the identification and the initial reason why they stopped him. Officer Nguyen claims that he and Sergeant Gray, and it was Sergeant Gray who ordered him to be detained. They said they did so because they thought he was someone that had previously been banned from the block. But again, they don't tell Mr. Blankenhorn why he's being detained. When he's being detained, they don't say, hey, are you someone that's been banned from the block? And most importantly about the identification, they don't ask for his identification. Well, there's a dispute, but why does all that matter? I mean, really, to me, that's all sort of foam up here to this underlying problem we're trying to get at, which is, is it Officer Gray who believes he's seen him before because he issued the do not come back order? That is correct. Okay, so he thinks he's seen him before. They get his identification. There's a dispute over whether they ask, he gives, or whatever. But anyway, the driver's license lands there on the ground. They go, they check it out. They find out he's the Mr. Do not detain person. And it's after that that the security guard says you're arrested for trespassing. That is correct. Okay. What I'm having trouble making the connection on is if the security guard says he's arrested for trespassing, and even if he doesn't have the exact right statute or name for this thing, if he's making that arrest, and there's probable cause to arrest him for something, what's wrong then with the police making the arrest? Because there was no probable cause for them to make the arrest. Under which, under none of the 602 sections. Under either statute. Now the one he's arrested for is 602J. Correct. Which is entering the property with the intent to injure property rights or interfere or obstruct the lawful business activity of the block. There was absolutely no evidence of that. Now to accept a citizen's arrest, the security guards have to actually witness him doing something that shows that he has an intent to injure property rights or obstruct the lawful activity of the block. Okay. Let's stop right there. Okay. Because this really is, you're totally correct, at least to me, this is a troublesome issue in the case. If the security guard finds out that he's under one of these do not trespass orders, and he's coming on to the property to which the shopping center has property rights, why isn't that sufficient to fall under the statute of property rights? Section of the statute. Which, 602J or O? J. J, the interference. Well, the one where you don't have to ask him not to come back. Forget that statute, because they didn't tell him to leave or anything. The problem is, is that exact factual scenario was before the California Supreme Court as far back as 1970. In the case, In re Wallace, which is cited in our reply brief and discussed extensively. In that case, security guards saw petitioners at a county fair passing out literature, distributing leaflets, talking to patrons, and they said, you have to leave. And you can't come back if you intend to engage in that same activity. Well, they do come back, and they do engage in that same activity. And the California Supreme Court said there is no evidence in that case of an intent to interfere with property rights or obstruct lawful business activity. You cannot infer an intent to obstruct lawful business activity or injure property rights. Merely because you were told to leave at one point, which was four months prior, and he comes back. That would be absurd if you could infer such an intent based upon those facts alone. And there are no any cases that say that. The California Supreme Court has rejected it. The same argument could have been made in Hamburg versus Walmart stores, where the store manager was diverted from his duties to deal with the persons in the parking lot. And again, the courts have said there is no evidence. These security guards, remember, they are summoned. So they're not there when they see Blankenhorn walking around. They didn't see anything that Mr. Blankenhorn did which shows an intent to injure property. And perhaps it might be useful, and they're not in our brief, to give you cases where there have been violations of 6WJ. Let me ask you, in Wallace, were they looking at injury to property right or injury to business? They're looking at obstructing business activities or injuring property rights. In your view, the Wallace, the Supreme Court of California looked at both prongs of, I guess this is 602J, correct? Yeah. They're not really prongs. They're all sort of, yeah. They're discontinued. Exactly. But it talks about injuring, yeah, interfering with, obstructing the lawful business, you know, or property rights. So you're saying that that case covers all of those scenarios. Absolutely, because they're just looking at in Wallace whether or not there was evidence of the intent. And they found that there was no evidence of intent. And that's the California Supreme Court. That is law that is binding on everyone. You don't get to make mistakes of law. In fact, in the Beyer case that Justice Berzon wrote the opinion, it was clear that, again, probable cause cannot be based on a mistake of law. And it was obvious here they didn't have probable cause. And there's further evidence of that. They don't even charge in the district. I have another sort of conceptual question. Okay. I know that the Beyer was in a slightly different situation. And we didn't quite say that, I don't think. But if they had, if there were an ambiguous statute and you interpreted it in a reasonable fashion, but we then look at it and say, well, that may be reasonable, but it's wrong. Does that mean that you don't have probable cause? I would say, again, the language that you were relying upon in the King case. It does mean you don't have probable cause. It doesn't mean that there's 1983 violation there. Well, if the mistake is reasonable. There can be qualified immunity if the mistake is reasonable. But the mistake here. If the law is reasonable, there can be qualified immunity. That's what I'm trying to find out. Suppose I read the statute one way and then the court reads it another way. As long as that mistake was contemplated at the time of the arrest. In other words, it's something that was at issue. So if the officers reasonably believe that there was a violation of 602J, which is unreasonable in right of the California Supreme Court decision, and that's the main point I'm making is, Hamburg versus Wal-Mart stores make it clear that this is not sufficient evidence. And it would be absolutely. I'm sorry. What's that? Exactly. That's the point. The D.A. charges him with a statute that requires you to ask him to leave and that he refuses to leave, which there's no evidence that that ever occurred in this situation. You're standing there looking at this tape, which I've done, and you say, what are they talking about for all that time? If they're not saying, telling him, please leave. But apparently they weren't. They all said they weren't asking him that. Exactly. They don't ask. All they had to say was, please leave, and that would have been it, and they could have arrested him and that would have been it. And you're seeing the troubling aspect of this case. They don't let him leave. They threaten him with mace. They hold on to his shirt to keep him there. They went out of their way to get this guy arrested. My understanding is the California statute has now been amended such that all you need is the four months earlier, don't come here. That is not my understanding. But anyway, it wasn't there at the time. Okay. And it's not my understanding, but that is the case. I'll take a look at that. But if you want me to address that aspect. Well, I think doesn't the county or the city say that that's tantamount to a you must leave? In other words, the standing notice that you're not supposed to be there is tantamount to a you must leave exhortation. Actually, they don't make that argument on appeal. And that's one of the. Well, maybe I made it in my head because I was trying to. I was trying to trace all the ways of these statutes, but they don't make that argument. They don't make that argument on appeal. Not only that, but that's what the district court held. That is correct. The district court held that. And here's the problem with that. This is not a restraining order. This is not something a court has issued that says the minute you step on this property because we told you not to step on, you can get arrested. This is something concocted by block security and by the police. And if you look at the plain language of the statute, technically speaking, coming back after being told four months earlier not to come back is not the same as refusing to leave after being asked to do so. The statute makes these requirements contemporaneous. And the cases we cited, James v. City of Long Beach, People v. Medrano, envisage a contemporaneous act where the owner says or he tells an agent or he tells the officer, I want these guys off my property. And they leave. They get off the property. Or they don't and they get arrested. This is not a novel situation either. And this is something brought up in oral argument by counsel for plaintiffs, which is do you have this with the homeless individuals that may come to a gas station or may frequent a gas station? Each and every time they go to that gas station, if you want a conviction under 602, they have to refuse to leave. This is not new stuff. Sure. I don't think so. At the very least, it has to be communicated. And that's the Medrano case. You have to communicate it to the person you want to leave. Now, the part with the police officer, they're saying it's a dual request. In other words, he has to go to the police officer and then the police officer goes to the individual. But other than that, the individual then will have to ask Mr. Blankenhorn. I think under Medrano, it's both. And that would be the case that I would rely upon. And also in James v. City of Long Beach, even though it was an officer that tells him to leave, there was a prior ban of this individual from the ballpark. And yet, it's the subsequent request to leave that's made. And his refusal, or at least he eventually complies, that's the issue in that case. But let me just make a point about qualified immunity with respect to that. The officers don't arrest him for 602-0. They're not thinking about whether or not this prior ban is a request to leave as it satisfies with the statute. And as stated in Beyer, you shouldn't get qualified immunity for something you didn't contemplate at the time. If there was probable cause to arrest, even if they say the wrong thing, then doesn't your argument go out the window? That's the first prong. That would be Devin Peck v. Alford. So the first prong is, if there's probable cause for any statute, then they went on the first prong and they get qualified immunity. Now, let's assume on the first part I'm correct that there is no probable cause. The second question would then be, was the law clearly established such that a reasonable officer would know that his conduct violated the law? As to that prong only, you shouldn't get qualified immunity for a mistake that you didn't even contemplate at the time of arrest. The 602-0 charge is brought by the DA after the fact. And it's because she knows that the 602-A charge won't stick. It won't stick because there's no intent to interfere with property rights or interfere with lawful business activity. That's the importance of it. So, again, 602-0, there was no probable cause and they didn't contemplate it. What is your best support for kind of slicing the qualified immunity that thin? I would rely on the Beyer case. In Beyer, the defendants tried to raise an argument about an interpretation of a restraining order that they never bothered to read. And what this court said was, you don't get to qualified immunity for a mistake you didn't contemplate. You never read the restraining order at the time this occurred. So you couldn't have been confused about the meaning of a certain provision in that restraining order. But in Gross, I mean, this is different. In effect, they had a shopping center restraining order. And they were saying you shouldn't be here because of the shopping center restraining order. I don't consider it a restraining order. That's why I'm calling it a shopping center restraining order. It's not a court order. A shopping center, you know, sort of proviso or whatever you want to call it. So that was the basis on which they were arresting them. You're not supposed to be here because they told you to not be here. So the question is, why isn't that in good faith? Because what they arrest them for, what they were thinking about is, well, this shows he has an intent to come on here and he's going to interfere with the property rights or he's going to do something that obstructs activity. That's what they're thinking at the time. I don't understand how this ties up to the case. Your ultimate position is that there was no reasonable person would think that either of these things were right. Absolutely. Absolutely. It's really not necessary. I'm just making the point, the extent there is some confusion about 602 or possible 602-0, it's not something that anyone thought of at the time they were arresting Mr. Blankenhorn. And that was the only point I'm trying to make. Do you want to reserve the rest of your time? Yes, I do. Thank you, Your Honor. Was there a racial aspect to this case? I'm sorry? Was there a racial aspect to this case? That's the point I've been trying to bring out. We think there is. We think it's really stopped because of the Dodger jersey, the baggy pants, and his race, Latino. Good morning. May it please the Court. My name is Lois Boback, and I'm here on behalf of the defendants and appellees. I'd like to address Judge King's comment first, and that is that there's no allegation in this case of any racial bias. Certainly no evidence was presented at the district court level about any racial bias, so I don't think that that is an issue in this case. With regard to the question of probable cause, I would agree with counsel for Mr. Blankenhorn to this extent, that when the officers, when Sergeant Gray first observed Mr. Blankenhorn at the block, he knew that Mr. Blankenhorn had been barred from the block. He was present the night that the notice not to return was issued to Mr. Blankenhorn. And the whole purpose of the detention was to confirm that fact through security. And when the... I mean, it's clearly bizarre. Why, at that point, didn't they just say to him, please leave? We wouldn't be here. That's absolutely in hindsight. That might have been the best way to resolve this issue. But there's no constitutional requirement that the police or private security... No, Your Honor, I would disagree with you. There is a statutory requirement if he had been arrested and if the police were attempting to establish probable cause under 6020. But the police weren't attempting... We never asserted. The city and the police officers never asserted 6020. And, in fact, in the... That's what the prosecutor charged him with, but that's not what he was arrested for. It's not relevant to the question of whether the police had probable cause to arrest him on the night that he was arrested. Okay, so if you're saying he wasn't... He can't fall under O, at least at that moment. And then for what we know, things go down the road with the prosecutor. Are you saying he's under J, then? I'm saying he's under J, which I believe is now K. He would also, if I could add, he would also fall under M. And 602 M says entering any private property without the consent of the owner. That was not charged, and it wasn't argued in the papers, but to the extent that the court can now look at the facts and say, well, is there probable cause for an arrest under any of the statutory bases? Well, let's stop there. Can we do that now if it's never been argued? Isn't that waived? I mean, it's kind of an odd thing because it's a legal question, but on the other hand, it's never been argued. It is a legal question, and I apologize for not raising it sooner. I frankly didn't notice it until I was preparing for oral argument. J, K, L, M. M says entering and occupying real property or structures of any kind without the consent of the owner. Well, you enter. But also enter. Enter any real property. Well, I would submit that M was another possibility available to the officers. Clearly, they were looking at J. K. Let's go back to J. K., and what Mr. Blankenhorn's counsel says is that under Wallace, he couldn't fit under J. K. I believe that Mr. Blankenhorn grossly overstates the holding of the Wallace decision. Wallace was, in fact, a very narrow decision, and the decision says we're addressing a very narrow issue. In Wallace, the security officer arrested the protestors on the specific theory that the protestors were blocking access to a sidewalk. Well, not really a sidewalk, but to an exhibition area. And that was the justification given for the arrest. I'm going to arrest you unless you stop obstructing the sidewalk. This was the original arrest? That was the original arrest. That was what the security officer said. If you don't stop obstructing this sidewalk, I'm going to arrest you. The protestors continued with their activities, and the arresting off the security officer arrested him, arrested them, and they were charged with violation of 602. The 602J. The question in front of the court was whether there was sufficient evidence presented at trial to sustain that conviction. The question wasn't whether there was probable cause for the initial arrest. The question was whether there was sufficient evidence to support the judgment. And the court pointed out, the California court pointed out that the security officer admitted that from what he could tell, the protestors weren't actually blocking anybody from seeing the exhibition. They could walk around them. They weren't taking up any space that a family of four from Iowa that were looking at this same exhibit wouldn't be taking up. Every property owner. Well, the question isn't whether or not the officers could prove beyond a reasonable doubt that Mr. Blanket. Right. Whether there was a fair suspicion. Every property owner in California, and I would submit every property owner across  from your property that you don't want on your property. Now, in Pruneyard, and I've. Do you have any, the problem is that this is part of a much larger statute, and if you were right about that, it doesn't seem like you'd need any arrest for the statute. Well, 602 sets up a number of different bases for arresting somebody for trespass. If it were a trespass to come on property that if the owner had ever told you that they didn't want you there, as I understand it, a place open to the public otherwise, an awful lot of the rest of the statute would be immaterial, particularly the new T, which seems to be addressed to particular situations. Well, it wouldn't be immaterial because there's two things you could do. You could come on there when they didn't want you on there, or maybe they want you on there, but if you come on, you shouldn't obstruct, you shouldn't, you know, have a riot on their property. So there are two aspects to it. The statute says more than one thing. It says you can't come on to my property for the purpose of interfering with my property rights. And it's also, that's a separate violation of 602J would be being on my property or coming on to my property with the intent of obstructing my business. Those are two entirely separate things. If the store, if the mall had a property right to exclude people from their property, and every property owner in the United States, it's an incident, it's one of the bundles of right that everybody has when they own property. It's the right to exclude people. There is an exception for First Amendment activities under California law, but Mr. Blankenhorn wasn't engaging in core First Amendment activities. He was just hanging out with his friends and hoping to meet girls. I don't other than to say that the only, Pruneyard created an exception to the general rule. Pruneyard said that other than reasonable time, place and manner regulations, property, the free speech rights of individuals takes precedence over the right of property owners to exclude people from their property. So I guess I would rely on Pruneyard. He had the right to exclude people from his property. All he had to do was ask them to leave. They didn't do that. They did ask him to leave. They asked him to leave several months before. And because they had the right to ask him to leave, and it's undisputed, he acknowledges that he knew they didn't want him to come back. So when he intentionally came back to the property knowing that he wasn't welcome, he purposefully interfered with their property rights. Or at least that's what a reasonably prudent police officer could have believed. And believing that a reason to be here, because if a fear of a specific word, I mean, interference suggests getting in the way of it in some fashion. I mean, here, again, all they had to do was say, you're not supposed to be here and leave for some crazy reason. They didn't do that. That was an option that they had. They could have said, Mr. Blankenhorn, you're not supposed to be here. We want you to leave, and asked him to leave. And that's section O. That's section O. But section J says that as soon as you come onto the property and interfere You have to make the word interfere mean that. And it's a strange use of language. And you have no support in any case law for it. If I have a right, and I think that the Pruneyard case, by creating an exception, recognizes the right. The owners of the block can ask people to leave. Pruneyard wasn't about any specific subsection of section O2. It was about the general notion that you have a right to not have people come on property if you don't want to, which, of course, you do. And all they had to do was ask them to leave. That's correct, Your Honor. But I would submit that a reasonable police officer Now, maybe you're going to tell us that their interpretation was wrong. But I don't think that it was a reasonable interpretation on the night that Mr. Blankenhorn was arrested. He had been specifically directed that he wasn't welcome at the block. The owners of the block had a property right to exclude him. He came onto the property in disregard of that property right. That's an interference where a reasonable police officer could have concluded that that was an interference with that property right. Let me just ask you about the statute because we're kind of being precise. Are you saying he was there interfering or he was there for the purpose of injuring a property right? I think it injures the property right. And the injury is simply being there? The injury is simply being there after having been told not to come back because it injures the right of the owners of the block to control who comes onto their property. Okay. Well, let's say just for getting to the next stage purposes that you raise, then we would have to deal with this host of events that occurred. And one need only look at the film to see the kicking and that sort of thing. What is your position with respect to Officer Nguyen and the excessive force? Officer Nguyen, the tape shows that there were some jabs to the midsection. I don't believe that the tape supports any contention that there were kicks by any of the officers. I don't believe that it supports that there were any punches to the head or anything. I think what it shows at most is some punches to the midsection. Under the circumstances, when police officers are taking an individual into custody and that individual is not cooperating, I don't believe that it is constitutionally excessive to jab somebody a couple of times in the midsection. I think if they were hitting him in the face, it would be a different question. But to jab somebody in the midsection with the intent of distracting them or causing them, you know, some pain so that they will release their arms so that the arm can be brought behind them to handcuff, I don't think that that's constitutionally excessive. He's being arrested. No, he's being arrested because they have a little piece of paper that says you're not supposed to be here. That's what he's being arrested for. And at this point, he might have been rude, but he's put up no fight. He's done nothing threatening, correct? Well, there's disputed evidence on that. Mr. Blankenhorn testifies that he was being rude, he was shouting, he was being belligerent, but that he was not threatening in any way. For purposes of this review, I think the court has to assume that he was not taking any active aggression against the police, at least until the police began the process of taking him into custody. The police arrested somebody for something fairly technical, I guess. Just issued any set of orders they wanted to facilitate the arrest, such as get down on your knees. Did they ever say to him, put your hands down, get the handcuff, or arrest him? I don't believe there's evidence in the record that they said, put your hands behind your back, they're arresting you. I believe they said, get down on your knees and put your hands behind your back, we're arresting you. So they can simply go about this any way they please, even if this was a traffic arrest and they wanted to tell me to get down on my knees, that would be okay? As long as it's not constitutionally excessive and as long as there is no case law that tells them that it is clearly constitutionally excessive. And I don't believe that there is any case law that's been cited to the court that suggests that telling somebody that you want to arrest to get down on your knees so that the police can arrest, can apply the handcuffs. The handcuff labor was just disturbing, is that they were sort of picking a confrontation. All they had to do was ask him to leave, and then after that all they had to do, as far as the record shows, is say, put your hands down, we're arresting you. And they obviously didn't want to proceed on that. When they asked him to, granted they asked him to get down on his knees, but I don't think that there's anything, I don't think the constitution prohibits police officers from asking an arrestee to get down on their knees. Any arrestee for whatever reason. Any arrestee for any reason, unless, unless some, excuse me? There was an expert in this test who said not constitutionally, but it wasn't the practice. Something not being a general practice does not make it unconstitutional. I can imagine a situation where it would be constitutionally impermissible. If you're talking about somebody in short pants and you've got a sidewalk that is very, very hot or that has bits of gravel on it or that has bits of glass on it and you're potential for injury. But that's not the case here. Mr. Blankenhorn had clearly been belligerent. He'd been shouting, he'd been gesturing to the crowd. That's obvious on the videotape. The police wanted to make sure that the arrests went as smoothly as possible. And asking him, he's a big guy, he was bigger than any of the officers present, with the exception of Ross, who appeared late in the game. Asking him to get down on his knees because they hoped that by doing that, they would avoid exactly the kind of situation that occurred is not unreasonable under all of the circumstances, given what they knew about his behavior ahead of time. There's a video of all this, isn't there? There is. It's hard to see because of obstructions. It doesn't quite show the extent of resistance that you're talking about. Unfortunately, when Blankenhorn is down on the ground and the officers are trying to get his hands behind his back so that he can be secured, most of that is obscured by a tree. Before that, there's really nothing to demonstrate that he was being physically belligerent. He's gesturing with his arms, he's admitting that he's swearing and shouting. He moves back once, then he's in the middle of the palm tree most of the time. And he moves up to the security officer, he moves up to the police. And the police are standing very calmly. The police aren't gesturing at him. There's no indication that the police swore at him. The police were very calm. To go back to two legal questions. One is your position on the question of whether if there was no probable cause, is there a first day excessive force or what? No. I believe that ARPAN addresses that issue. In the ARPAN decision, there was a motion to dismiss, and the trial court granted a motion to dismiss the unlawful arrest claims, presumably finding as a matter of law that there was probable cause to arrest. And then the question of excessive force went to summary judgment. There's no probable cause. Yes. The question of excessive force went to a qualified immunity motion, which the trial court also granted. Both the motion to dismiss and the motion for summary judgment went up on appeal. The court reversed on the question of whether or not the complaint sufficiently alleged no probable cause and allowed that claim to go forward, but affirmed on the question that there was no excessive force and that the officer was entitled to qualified immunity on the excessive force claim. So that's a case where the court didn't specifically address that issue, but that was the practical result of the case. I mean, why would it be that if you had no right to arrest somebody at all, you could do so in a non-excessive fashion if you were involved in the activity at all? I think it gets back to the question of whether or not a reasonable police officer, knowing all of the facts and circumstances surrounding the arrest. I'm assuming something. I'm assuming there's no – not only is there no probable cause, there's no qualified immunity on the probable cause. So I'm just assuming that the whole arrest was totally admissible. Let's assume that. And how can there be – how can the force not be excessive? I don't know of any case law. I'm just curious about that. I'm not aware of any case law other than the Arpin decision, where the practical result of which was that somebody was allowed to go forward with their no probable cause. It didn't specifically say, well, gee, does it make sense to allow us to have the probable cause of action go forward without the excessive force, or vice versa. If there's no probable cause, then you can't have the resisting arrest charge either. I mean, so, you know, you follow that way. And then the question is, but you're saying you could have – you still could would be able to drop the excessive force charge under qualified immunity. I think that you – I think that if you are not using objectively unreasonable force, the fact that it's later determined that there was no probable cause should not mean that it is – it is as a matter of law excessive force. So why do we need probable cause to begin with? Well, because he's making an allegation that there was no probable cause for his arrest. So, I mean, that's – Correct. But that – under your theory, it wouldn't matter. I think that you separate the various causes of action. Well, it certainly has to matter, at least, under Graham, right? I mean, it matters. I think it's part – If it's zero, it's another question. I think it's – I mean, it means that the governmental interest starts to go very far down. So it matters. I think it's – My question is whether it goes down to zero. I think it's one of the – one of the factors that is taken into consideration. I don't think it takes you down to zero under Graham. You've been very helpful. It is – you made an assumption earlier about the probable cause issue, which is that you can have qualified immunity on probable cause even if you misunderstand the statute. And I'm wondering what your authority for that is. Oh, I'm not sure if I meant to say that – You said we might think that the statute – we might conclude that the statute doesn't reach this, but a reasonable officer could think it did. If a reasonable – yeah, if a reasonable officer, knowing what reasonably prudent officers would know in the field, could believe that they had probable cause to arrest, then I don't think that the – Their understanding of the statute. Their understanding of the factual basis as applied to the statute. I'm going to leave a question here. Does the language in K of insuring a property right mean this very abstract injury by simply showing up? Or does it mean something, you know, more active than that? I mean, that seems to me to be a purely legal question. There's no case law on it. So there are two issues about that. I mean, one of them is can the – let's assume we look at the statute and we say, you know, we've looked at everything that California says about this, and they didn't mean that. We decide that that's not what it means. Now, if the officer gets the law wrong, then, is that – how does that play out with regard to the application of saucier and so on? I believe that the officer in this situation would be entitled to qualified immunity because there's not – because at the time that he made the arrest, the law as articulated by the court at a later date was not clearly – was not clearly established. The law of probable cause was clearly articulated. But you're saying because the law of what the statute means wasn't clearly articulated, that comes into the qualifying immunity. Absolutely. Absolutely. Police officers on the street are not required to anticipate what courts will later – what courts will later say is or is not the law. They're only required to understand and know what the current state of the law is and to have some understanding of whether their actions clearly violate established law. And if the law isn't yet clearly established because no court has said, gee, we don't believe that under 602K – Well, I understand that as to constitutional theory, but this is sort of a – this is kind of a law as a fact more than a law as a law. It's a little odd. It's sort of a second-level problem here. But no – Why is California law such that – In Debbie Peck, for example, there was – and we've had other cases where the – somebody was stopped for not having a license plate in the right place and it turned out that isn't the law, that you didn't have to have that license plate. Now, we haven't tended to ask whether they reasonably thought you had to have the license plate. In some cases, the law is so clearly established that if you simply read the law, it says you don't have to have a license plate in the back – in the front, but you have to have a license plate in the back. If a police officer should reasonably know that you don't have to have a license plate in the front, but you do in the back, and he pulls somebody over for not having a license plate in the front, then I think that you could make a colorable argument that the officer isn't entitled to qualified immunity just because he wasn't quite sure how the statute was to be interpreted, particularly if there was case law on point that said – that said convictions are being overturned because you're arresting people for not having a license plate in the front and that's not the appropriate standard. But there's no case law, there's no California case law, and there's no Federal case law that put the officers – There was a case directly on point, and the arrestee even offered to – he had the case with him. He said, officers, let me show you the case. I have it right here in my briefcase, and the officers refused to look at it. That's very far from the facts of this case.  Thank you very much, Your Honor. Briefly, Your Honor, just really quickly as to the 602M issue, that has been waived. The Arvin case discusses when there's waiver. It's never been – What about K? I'm sorry. No, about K. K, whatever. K, K, right. The first part is okay.   and there were cases that had been decided that had been decided, which articulate when it is to obstruct lawful business activity, or when you have the intent to injure. And it's more active than just showing up when you previously have been told not to come. And I'm going to add two cases to the record that haven't been cited. First case is People v. Brown, 236 Cal App 2D Sup 915. In that case, they come to the bank with a specific purpose of interfering with bank transactions because they're protesting the bank's hiring practices. So they go to the front. They start counting out coins. They do all these things so other people can't get to the tellers. Another case, In Re Ball, 23 Cal App 3D 380. Again, there's something active. The person came to Disneyland, and he set up a table right where the tram unloads, knowing that the tram is going to have to now relocate. There's a lot of cases. First of all, before you leave, give those citations to me. But second of all, I think where we are is that there are known cases supporting the government's sort of very abstract approach to the KJK, but there don't seem to be any rejecting it either. Is that where we are? I don't believe it. I think because those facts for President Wallace, the court has implicitly ruled that there is no sufficient evidence just because you've been told to leave, and you come back. If the facts are there, and it's in the opinion, and it's been passed upon by the court, which says there is no evidence, and in Hamburg, Hamburg wasn't asked to leave, but it was the argument that security guards being diverted to deal with the defendants Okay. What if we disagree with you and say, well, it's not clear from Wallace, and so the question is whether the officers could have believed that the first part of JK was sufficient to affect an arrest, whether that was reasonable. Would that put them in qualified immunity land under the second part of? Assuming that, I would still say it's an unreasonable interpretation given the language of the statute. You can go just to the statute itself. It has to be something more than just coming back when you've been previously told not to. That's such a broad interpretation. But why isn't, I mean, a property right, it's not injuring the property. It's injuring a property right. And one would think that if you have, it's entering a land and you will injure a property right. Well, what do you think that means? I don't think it means just standing there. I think injuring a property right, I think it's tied to the obstruction part and the interference. It says or. So I guess the question is, if you can't tell us what a property right might be, is it reasonable to think that the officers were supposed to divine? Well, talk about injuring a property. Let's say you take something from the property or you spray paint. Like, that's a perfect six or two days. That's injuring the property. Right. A property right is separate from property, at least in the statute. If you're preventing someone from taking lawful title to a property by blocking that person from getting it. It's entering. I mean, see, I thought of that. It's not a lien situation, which, of course, could injure a property right. But this is very specific. It says you have to enter and you injure property or property rights. So I guess my question is, what does that mean? Property. What could you enter upon and injure in terms of a property right? I mean, it could be an air right, supposedly, I suppose. But, I mean, I don't think it can be an air right because what NRA law says is that every person has entitled to occupy a certain amount of space when they're on a property. So it definitely doesn't mean. But let's say the shopping center has all the air rights over it. You know, and so you go in and it doesn't obstruct anything, but you, you know, put on like a little mini air show right up there, right over their property. Could that be injuring their property right, which would include an air right? Putting an air show. I'm sorry. I'm sort of lost on the example. So they come on to the property. Yeah, you know, you come on to the property and then you start releasing little things that are going, circling all over your little. Yeah, I think if you go on to a property and do some sort of commercial activity or do some other show, which takes away from what the purpose. The more likely possibility a squad of somebody who comes on. I think that. And intends to just stay there and use the property as their own. I think that's actually what they probably mean. It's exactly right. Someone that just comes on the property and somehow wants to interfere with the transfer of the property or the owners. Right. Well, I would say that could interfere with transfer. They try to sell the property and there's a squatter. Interfere with the business potentially. Sure. You could be either. In other words, you can't really articulate for us what may or may not be included under property rights. I would think the squatter example could be exactly the precise situation where someone just comes on. That's an example. But what about when I say, look, I own this and I don't want you to come here anymore. And then you come back on. And my right is I do own this. I can keep, you know, as soon as I apply with the discrimination laws and everything else, I can keep out whoever I want. And now you come back. Why haven't you injured my property right, which is a right to exclude? It doesn't sound like an injury. What's the actual injury to the property? He still owns it. The property right. To the right. What's the injury to the right? He still owns it. Well, it's like intellectual property rights. I mean, the patent. And you can tell him to leave as soon as he gets on and says leave. But this doesn't require me to tell you to leave. There's another statute that says go away. Right. Nonetheless, the way his property right, I think the only injury would only be suffered if the person doesn't leave. If a person stays on land. It's a very fine cutter. If the person comes not intending to leave. Right. Then that would be injuring a property right. Let me use the example of Disneyland. Let's say someone 30 years ago is banned from Disneyland. And he happens to come back 30 years later. Is the law that he immediately steps on Disneyland with his family to go on the rides that he can be arrested for interfering with property rights and injuring or obstructing the lawful business of Disneyland? Okay. I think we have your point. And we're out of time, but we'll take the rest of the questions. But no more argument. Okay. I still think they're not entitled to qualified immunity. This is a mistake of law. A mistake of state law. And that's not an issue of a mixed question of law and fact. I guess the real question is does the probable cause reasonableness standard include the underlying statute, the reasonableness of the construction of the underlying laws to which the probable cause is being asserted? I would say no. Do you have any support for that? The only support I could use, and it would be extrapolation from your buyer decision. But the principle that a mistake of law can't justify probable cause, again, that should be extrapolated also that a mistake of law can't be now used for qualified immunity. In two sentences, can you tell us what we should do with the excessive force claim if we disagree with you on the probable cause? If you agree with us on the probable cause? Or disagree. I still think there's excessive force. They never gave him a warning that they're going to use force. They just go after him. He disputes that he was resisting arrest. The videotape is unclear. And nonetheless, even though he says he's not moving his arms or trying to prevent from being handcuffed, he's punched three times on the ground, and the request for him to get on his knees was completely unnecessary. Moreover, one of the officers on scene, Officer Ross. The request is not itself unconstitutional, but the force used thereafter solely based on his refusal to get on his knees without a warning that they're going to use force. And then after they tackle him and get him to the ground, and he claims he's not fighting with them to be handcuffed, then they punch him three times, that's excessive force. Thank you. Thank you. The case of Blankenhorn v. Orange is submitted. We'll next hear argument in Jimenez v. Costa Mesa. Thank you both for your arguments. This is a tricky case, and we appreciate both the briefs and the arguments. Thank you.
judges: Berzon, McKeown, King